Nicole Owens
Executive Director
Deborah A. Czuba, Idaho Bar No. 9648
Jonah J. Horwitz, Idaho Bar No. 10494
Christopher M. Sanchez, Idaho Bar No. 12070
Mary E. Spears, Indiana Bar No. 27353-49
Assistant Federal Defenders
Federal Defender Services of Idaho
Capital Habeas Unit
702 W. Idaho, Suite 900
Boise, Idaho 83702
Telephone: (208) 331-5530
Facsimile:  (208) 331-5559
ECF:  Deborah_A_Czuba@fd.org
       Jonah_Horwitz@fd.org
       Christopher_M_Sanchez@fd.org
       Mary_Spears@fd.org

Attorneys for Petitioner

IN THE UNITED STATES DISTR.ICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **THOMAS EUGENE CREECH**<br>        Petitioner,<br><br>v.<br><br>**TIM RICHARDSON,**<br>Warden, Idaho Maximum Security Institution,<br>        Respondent. | Civil No. 1:23-cv-00463<br><br>**CAPITAL CASE**<br><br>MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY FEDERAL HABEAS PROCEEDINGS<br><br>**Execution Scheduled November 8, 2023** |

Pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), and for the reasons that follow, Petitioner Thomas Eugene Creech respectfully asks the Court to stay the instant federal habeas proceedings until his ongoing state post-conviction action is

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 1

concluded. Given the exigencies created by the State's decision to acquire a death warrant two days after telling the undersigned and the Court that it was unprepared for executions, Mr. Creech also respectfully asks that opposing counsel be ordered to respond to this motion within three days of service.

*Rhines* permits federal district courts to stay habeas proceedings "while the petitioner returns to state court to exhaust his previously unexhausted claims." *Id.* at 275.[1] "Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." *Id.* at 275–76. *Rhines* itself dealt with a "mixed petition," i.e., one including both exhausted and unexhausted claims. 544 U.S. at 271. However, the Ninth Circuit has extended *Rhines* to petitions raising "solely unexhausted claims." *Mena v. Long*, 813 F.3d 907, 910 (9th Cir. 2016). Mr. Creech's habeas petition asserts a single unexhausted claim. *See* Dkt. 1. Therefore, under *Mena*, a *Rhines* stay is available.

*Rhines* stays are called for "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." 544 U.S. at 278. Those criteria are all satisfied here.

### I. Mr. Creech has good cause for his failure to exhaust.

First, Mr. Creech has good cause for his failure to exhaust because his claim only became available by virtue of recently emerging information. Mr. Creech's

---

[1] Unless otherwise noted, all internal quotation marks and citations are omitted, and all emphasis is added.

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 2

pending claim is based on the Eighth Amendment violation that arose when it became clear under the evolving standards of decency that there is now a consensus against the execution of prisoners who were sentenced to death by judges alone, without the assistance of juries. *See* Dkt. 1. By definition, that claim did not exist until the information supporting the theory had come into existence.

It would be especially inappropriate to find otherwise when existing precedent has not given Mr. Creech clear guidance as to when his theory became viable. For example, the Supreme Court in *Enmund v. Florida*, 458 U.S. 782, 794 (1982) found that it violated the evolving standards of decency to sentence to death a defendant who was responsible for the victim's death only in the sense of having accomplice liability for a felony murder. In *Enmund*, the Court noted that in the previous twenty-eight years only six of the country's 362 executions (1.7%) involved "a nontriggerman felony murderer." *Id.*

The Supreme Court in *Ring v. Arizona*, 536 U.S. 584, 608 n.6 (2002) identified five states as permitting capital sentencings to be performed exclusively by judges: Arizona, Colorado, Idaho, Montana, and Nebraska. However, in Arizona, Governor Katie Hobbs imposed a moratorium on all executions in January 2023, which is still in effect. *See Botched Executions Prompt Arizona Governor and Attorney General to Halt Executions Pending Independent Review of State's Execution Process*, Death Penalty Information Center, Jan. 23, 2023, available at https://deathpenaltyinfo.org/news/botched-executions-prompt-new-arizona-

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 3

governor-and-attorney-general-to-halt-executions-pending-independent-review-of-states-execution-process.

Given the moratorium in Arizona, Mr. Creech has a colorable argument that the state counts in his favor in the evolving-standards calculus. *See Hall v. Florida*, 572 U.S. 701, 716 (2014) (including jurisdictions that have moratoria on the anti-death "side of the ledger" while determining whether capital punishment is permitted for a particular class of inmates).

If one goes back twenty-eight years from today's date, as in *Enmund*, there have been 1,261 executions nationwide.[2] Of those, forty-two took place in Arizona, Idaho, Montana, or Nebraska and appear to have involved judge-sentenced inmates. That would constitute 3.3% of the overall executions. However, if Arizona is removed from the list, there would then be seven judge-sentenced executions in the last twenty-eight years, or .6%. In other words, if *Enmund*'s calculation is the north star, then the question of whether Mr. Creech's claim is meritorious now might depend on whether Arizona is or is not counted. Precedent does not unequivocally provide an answer to that question.

---

[2] *See* Death Penalty Information Center, Execution Database, available at https://deathpenaltyinfo.org/database/executions (hereinafter DPIC Execution Database). Courts routinely rely on DPIC for information regarding capital punishment. *See, e.g.*, *State v. Bartol*, 496 P.3d 1013, 1019 n.5 (Or. 2021) (en banc) (discussing a statement of facts that drew in part from DPIC's Execution Database and referring to the source as a "well-respected national database[s]"). The rest of the statements in this paragraph regarding execution rates are also supported by DPIC's Execution Database.

The above just goes to show that Mr. Creech was justified in bringing his petition in state court at the time that he did. It is based on the coming to fruition of a number of trends over a long period of time, and he has a plausible basis for raising it currently. *See Atkins v. Virginia*, 536 U.S. 304, 311 (2002) (reminding that under the evolving-standards test a "claim that punishment is excessive is judged not by the standards that prevailed . . . when the Bill of Rights was adopted, but rather by those that *currently prevail*"). The reality of evolving-standards theories is that they are, by definition, always evolving. *See, e.g., Roper v. Simmons*, 543 U.S. 551, 561 (2005) (revisiting the sixteen-year-old line drawn for purposes of capital eligibility in light of additional data). A determination that Mr. Creech lacks good cause would imply that it should have been presented in state court earlier. But the impossibility of pinpointing that earlier moment in this quintessentially fluid area of law undermines such a determination.

Execution data reinforces the same proposition. On June 8, 2022, Arizona executed Frank Atwood. *See* DPIC Execution Database. And on November 16, 2022, Arizona executed Murray Hooper. *See id.* Messrs. Atwood and Hooper were both sentenced to death by judges. *See Hooper v. Shinn*, 985 F.3d 594, 609–10 (9th Cir. 2021); *Atwood v. Ryan*, 870 F.3d 1033, 1061–62 (9th Cir. 2017). However, as noted above, Arizona's governor imposed a moratorium on executions in January 2023. And November 2023 will be the first time that Mr. Creech can rightly say that it has been a full year without a judge-sentenced execution. All of that again

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 5

goes to show why it would be illogical to maintain that the claim ought to have been raised earlier, and thus why there is good cause for raising it now.

Another reason why there is good cause is that the Eighth Amendment prohibits the "infliction" of cruel and unusual punishments. The infliction of a punishment is distinct from its imposition. A capital punishment is "inflicted" when the State seeks to carry out an execution. That occurs with the issuance of a death warrant. It is consequently appropriate for Mr. Creech to raise the claim after a date has been scheduled for his execution. *Cf. Martinez-Villareal v. Stewart*, 118 F.3d 628, 633 (9th Cir. 1997) (explaining why a competence-to-be-executed claim only ripens with the issuance of a death warrant).

## II.  Mr. Creech's claim is potentially meritorious.

Second, Mr. Creech's claim is potentially meritorious. This prong involves the modest burden of demonstrating only that the claim is not "plainly meritless." *Rhines*, 544 U.S. at 277. Mr. Creech can clear that low obstacle with ease.

The evolving-standards test considers decisions by legislature, juries, appellate courts, and governors. *See Roper*, 543 U.S. at 563–65; *Atkins*, 536 U.S. at 313–17 (2002). "Statistics about the number of executions" are also relevant. *Kennedy v. Louisiana*, 554 U.S. 407, 433 (2008). As demonstrated more fully by a review of Mr. Creech's state post-conviction petition, he has assembled a copious amount of evidence along each of those metrics to establish that the evolving standards of decency condemn the execution of a judge-sentenced inmate. *See generally* Dkt. 2-1.

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 6

In terms of death-row populations, Mr. Creech shows in his post-conviction petition that there are—at most—forty-nine judge-sentenced inmates on death rows around the country. *See* Dkt. 2-1 at Part II.A.1.a. That is well below the number of juvenile non-homicide life-sentenced inmates that were tallied up in *Graham v. Florida*, 560 U.S. 48, 64 (2010), where the practice was deemed unconstitutional under the evolving standards of decency. And the 2.1% of death-row prisoners (again, at most) who were put there by judges is substantial lower than the 10% ratio that was seen as evidencing a consensus in *Coker v. Georgia*, 433 U.S. 584, 596–97 (1977) (plurality op.).

As for execution rates, Mr. Creech describes above how the data militates in favor of his claim. *See supra* at Part I.

With respect to legislative decisions, Mr. Creech explains in his post-conviction petition that only five states had decided—at the time *Ring* was announced—to allow for judge sentencing in capital cases, even though the Supreme Court had before then approved of the practice. *See* Dkt. 2-1 at Part II.A.1.a. There were also three additional states at that time that involved juries in capital sentencings but diluted their influence, such as by authorizing death sentences despite non-unanimous verdicts, allowing judges to overrule verdicts for life, and so forth. *See Woodward v. Alabama*, 134 S. Ct. 405, 407 (2013) (Sotomayor, J., dissenting) (placing in that category Alabama, Delaware, and Florida). In Delaware, the state supreme court struck down the capital statute in 2016 and the legislature has declined to fix the infirmity, leading to what is essentially a

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 7

legislative abolition of the death penalty there. *See* Carol S. Steiker & Jordan M. Steiker, *Little Furmans Everywhere: State Court Intervention and the Decline of the American Death Penalty*, 107 Cornell L. Rev. 1621, 1632–38 (2022). The Alabama legislature abolished judicial override in 2017. *See* Meghann M. Lamb, *Overturning Override: Why Executing a Person Sentenced to Death by Judicial Override Violates the Eighth Amendment*, 95 S. Cal. L. Rev. 663, 666 (2022). Florida is the only exception in that it does still allow for death sentences to be imposed in the absence of a unanimous jury verdict. *See* Fla. Stat. Ann. § 921.141(2)(c). In overview, of the three most relevant states, two have reduced the influence of the judge at capital sentencings, and no other jurisdiction has moved in the opposite direction. That reflects "the consistency of direction of change" in Mr. Creech's favor. *Roper*, 543 U.S. at 566.

Turning to sentencing decisions, in the few states that allowed it, judicial override was used 125 times in the 1980s, 74 times in the 1990s, and then only 27 times between 2000 and 2013. *See Woodward*, 134 S. Ct. at 407 (Sotomayor, J., dissenting). That shows a steady decline in the appetite of state courts to sentence defendants to death without the unanimous approval of juries. Of the twenty-seven judicial overrides that occurred between 2000 and 2013, twenty-six of them took place in Alabama. *See id.* That demonstrates that the practice has become extremely isolated as a geographical matter, which again reflects its unpopularity nationwide. *See Kennedy*, 554 U.S. at 427, 434 (stressing in its finding of an

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 8

evolving standard of decency that there was only one state that had imposed the sentence at issue in the previous forty-four years).

Additionally, in his post-conviction petition, Mr. Creech surveys the trends against the death penalty generally, *see* Dkt. 2-1 at Part II.A.1.d., which he is entitled to rely on in making out his particular evolving-standards theory. *See Hall*, 572 U.S. at 716 (including states that have abolished and that have moratoria in the evolving-standards count for a specific type of inmate). As set forth in the petition, twenty-two states have abolished the death penalty. *See* Dkt. 2-1 at Part II.A.1.d. Three additional states have moratoria on executions. *See id.* Eleven other states authorize the death penalty but have not executed anyone in the last ten years. *See id.* Death sentences are dramatically down over the last two decades, declining from 315 in 1996 to just twenty in 2022—and seven straight years with fewer than fifty in each year. *See id.* The number of people on death row around the country has now declined for twenty-one straight years. *See id.* Executions have dropped by 82% since their peak of 98 in 1999, with just eighteen in 2022 and fewer than thirty each year for the last eight. *See id.*

Finally, in his post-conviction petition, Mr. Creech points to the substantive basis for the courts to embrace his evolving-standards theory, since—under the Eighth Amendment—it is "the *jury's* task of expressing the conscience of the community on the ultimate question of life or death." *McCleskey v. Kemp*, 481 U.S. 279, 309 (1987).

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 9

In view of all of the above, Mr. Creech's claim is far from "plainly meritless," *Rhines*, 544 U.S. at 277, and this prong is accordingly satisfied.

### III. Mr. Creech has not engaged in intentional delay.

Third, Mr. Creech has not engaged in intentional delay. As set forth above, Mr. Creech's claim only became viable as a result of present-day trends. *See supra* at Part I. After those trends came to fruition, Mr. Creech marshaled his evidence and presented it in court.

Mr. Creech also noted above how evolving-standards claims are properly brought once execution-dates are set, since they relate to the infliction of the punishment. *See supra* at Part I. The death warrant here was issued on October 12, 2023. Mr. Creech filed his state post-conviction petition only one day later, and he is now moving for the appropriate remedies in federal court shortly thereafter. That is by any measure expeditious, and the third prong is consequently met.

### IV. Conclusion

For the reasons stated, Mr. Creech respectfully requests that the Court stay and abey this federal habeas case until his ongoing state post-conviction proceedings are fully resolved. Given the exigencies created by the State's decision to acquire a death warrant two days after telling the undersigned and the Court that it was unprepared for executions, Mr. Creech also respectfully asks that opposing counsel be ordered to respond to this motion within three days of service.

//

//

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 10

DATED this 16th day of October 2023.

/s/ Jonah J. Horwitz
Jonah J. Horwitz

Attorney for Petitioner

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of October 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of Electronic Filing to counsel for the State, and I emailed the pleading to him as well at the address below:

L. LaMont Anderson
Lamont.Anderson@ag.idaho.gov

/s/ Jonah J. Horwitz
Jonah J. Horwitz

MEMORANDUM IN SUPPORT OF MOTION TO STAY AND ABEY - 11