UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS EUGENE CREECH,<br><br>      Petitioner,<br><br>v.<br><br>TIM RICHARDSON, Warden, Idaho Maximum Security Institution,<br><br>      Respondent. | Case No. 1:23-cv-00463-AKB<br><br>**CAPITAL CASE**<br><br>**ORDER DISMISSING PETITION FOR LACK OF JURISDICTION** |

# INTRODUCTION

On October 16, 2023, Petitioner Thomas Eugene Creech filed his third Petition for Writ of Habeas Corpus (Dkt. 1), under 28 U.S.C. § 2254, challenging the constitutionality of his death sentence. Pending before the Court is his motion to stay and abey consideration of his petition under *Rhines v. Weber*, 544 U.S. 269 (2005), until his ongoing state post-conviction action is concluded. (Dkt. 3). Having carefully reviewed the record, the Court finds oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 9.2(g)(4) ("Motions and petitions will be deemed submitted, and will be determined, upon the written pleadings, briefs, and record, unless the court, in its discretion, orders oral argument on any issue, claim, or defense."). For the reasons discussed below, the Court concludes that Creech's Petition for Writ of Habeas Corpus is an unauthorized successive petition under 28 U.S.C. § 2244(b) and that the Court lacks jurisdiction to grant Creech's requested relief.[1]

---

[1] Consistent with the Supreme Court's practice, this Court uses the word "petition" interchangeably with the word "application," despite that the applicable statute refers to an application. *See, e.g.*, *Magwood v. Patterson*, 561 U.S. 320, 324 n.1 (2010) (noting practice of using words "petition" and "application" interchangeably).

## BACKGROUND

In 1981, Creech was serving two life sentences for multiple first-degree murder convictions when he brutally murdered a fellow inmate.[2] In 1982, an Idaho state court judge in a written opinion sentenced Creech to death for the inmate's murder. *See State v. Creech* (*Creech I*), 670 P.2d 463, 466 n.1 (Idaho 1983) (discussing sentencing proceedings). On appeal, the Idaho Supreme Court noted the sentencing judge was required to pronounce Creech's sentence in open court in Creech's presence and remanded for resentencing. *Id.* On remand, the judge declined to allow Creech to present new mitigating evidence at the sentencing hearing and sentenced him to death again. *Id.*; *Creech v. Arave* (*Creech II*), 947 F.2d 873, 881 (1991) (discussing sentencing judge's failure to allow new mitigating evidence). On appeal, the Idaho Supreme Court affirmed Creech's sentence holding, among other things, that "jury participation in the sentencing is not constitutionally required." *Creech I*, 670 P.2d at 474.

Following his death sentence, Creech embarked on a lengthy, complicated journey of collaterally attacking his conviction and death sentence in both state and federal courts. In federal court, Creech has now filed three petitions for habeas corpus relief. Creech filed his first petition in 1986. After the district court denied that petition, the Ninth Circuit reversed the denial, ruling Creech was entitled to another resentencing hearing to present "any and all" mitigating evidence. *Creech II*, 947 F.2d at 881. The Supreme Court reversed the Ninth Circuit's decision in part but did not disturb the ruling that Creech was entitled to another resentencing hearing to present mitigating evidence. *Arave v. Creech* (*Creech III*), 507 U.S. 463, 478-79 (1993). On remand in 1995, the sentencing judge conducted a multi-day sentencing hearing and again imposed the death penalty. *Creech v. Hardison* (*Creech IV*), No. 1:99-cv-00224-BLW, 2010 WL 1338126, at *3 (D. Idaho March 31, 2010) (discussing resentencing proceedings).

In January 2000, Creech filed his second habeas petition in federal court.[3] *Creech IV*, No. 1:99-cv-00224, at Dkt. 17 (Jan. 20, 2000). The district court stayed the case pending the

---

[2]  The Idaho Supreme Court has previously set forth in detail the nature and circumstances of the inmate's murder. *See State v. Creech*, 670 P.2d 463, 465 (Idaho 1983) (discussing facts and affirming judge's resentencing); *see also Arave v. Creech*, 507 U.S. 463, 465-66 (1993) (describing facts).

[3]  The record occasionally suggests Creech filed his second petition for habeas corpus relief in 1999. Although Creech initiated his second habeas action in late 1999, he did not actually file

resolution of Creech's state post-conviction proceedings, and in March 2005, Creech filed an amended second petition in federal court, alleging forty-five claims including that he had a constitutional right to have a jury determine his sentence. *Id.* at Dkt. 131, ¶ 355 (alleging claim 40). In support of this claim, Creech cited the Sixth, Eighth, and Fourteenth Amendments and *Ring v. Arizona*, 536 U.S. 584, 603-09 (2002), in which the Supreme Court held that, under the Sixth Amendment, a jury must decide beyond a reasonable doubt any aggravating fact making a defendant eligible for the death penalty.

Addressing Creech's March 2005 amended petition, the district court denied some of Creech's claims in March 2006, including his claim he had a constitutional right to have a jury determine his sentence. *Creech IV*, No. 1:99-cv-00224-BLW, 2006 WL 851113 (Mar. 29, 2006). In denying that claim, the district court noted the Supreme Court had concluded the holding in *Ring* did not retroactively apply to death sentences, such as Creech's, which were final before *Ring* issued. *Id.* at *2 (citing *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (rejecting argument that *Ring* was either substantive or watershed procedural change in law)). In March 2010, the district court denied Creech's remaining claims alleged in his second petition. *Creech IV*, No. 1:99-cv-0224-BLW, 2010 WL 1338126 (Mar. 31, 2010) (denying non-dismissed claims); *Creech IV*, No. 1:99-cv-00224-BLW, 2010 WL 2384834 (June 9, 2010) (denying motion to alter or amend judgment).

Creech appealed the denial of his second petition to the Ninth Circuit. While the appeal was pending, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1, 9 (2012), which held that ineffective assistance of post-conviction counsel can excuse a default of an underlying claim for ineffective assistance of trial counsel. The Ninth Circuit remanded Creech's case to the district court to consider *Martinez*'s application to Creech's claims, and in January 2016, the district court concluded Creech failed to satisfy the requirements of *Martinez* and reaffirmed its previous dismissal of Creech's second petition. *Creech IV*, No. 1:99-cv-00224-BLW, 2016 WL 8605324 (Jan. 29, 2016). After reconsideration of this decision, the district court entered a judgment in March 2017. *See Creech IV*, No. 1:99-cv-00224-BLW, 2017 WL 1129938 (Mar. 24, 2017) (denying reconsideration).

---

his petition until January 2000. *Creech v. Paskett*, No. 1:99-cv-00224, at Dkt. 17 (D. Idaho Jan. 20, 2000).

In February 2023, the Ninth Circuit affirmed the district court's denial of Creech's second petition, and on October 10, the Supreme Court denied Creech's petition for writ of certiorari. *Creech v. Richardson*, 59 F.4th 372 (9th Cir. 2023), *cert. denied*, No. 23-5039, 2023 WL 6558513 (U.S. Oct. 10, 2023). Two days later, on October 12, an Idaho state district court issued a death warrant for Creech's execution. (Dkt. 7-1).

The following day, October 13, 2023, Creech filed a petition for post-conviction relief in state court, alleging his death sentence violates the cruel and unusual clauses of the United States and Idaho Constitutions because a judge imposed the sentence without any jury participation. (Dkt. 2-1 at ¶ 53). On October 16, the state post-conviction court dismissed Creech's petition as untimely under Idaho Code § 19-2719. (Dkt. 6 (Notice of Lodging) State's Lodging R.1, pp. 210-15). The state court reasoned that "Creech knew or reasonably should have known before September 1[, 2023,] of the ostensible basis for the claim asserted in the petition." (*Id.* at p. 213).[4]

On that same day—October 16—Creech filed his third federal habeas petition, which is at issue in this case.[5] (Dkt. 1). In this petition, Creech alleges an Eighth Amendment evolving-standards claim. Specifically, he alleges that "[e]volving standards of decency render [his death] sentence unconstitutional because it is cruel and unusual under the Eighth Amendment to execute a man whose punishment was determined by a single judge, without a jury." (Dkt. 1 at ¶ 1).

## ANALYSIS

### A. Legal Standard for Successive Petition Under § 2244(b)

The Eighth Amendment protects against cruel and unusual punishments and prohibits "not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). Federal habeas corpus relief under 28 U.S.C. § 2254 is available to petitioners who show they are held in custody under a state court judgment violating the United States Constitution, laws, or treaties. *See* 28 U.S.C. § 2254(a). Petitions for habeas

---

[4] Creech appealed the district court's denial of his post-conviction petition, and the Idaho Supreme Court ordered expedited briefing and scheduled oral argument for February 5, 2024. (Dkt. 14-1).

[5] On October 16, 2023, Creech also moved in this case for a stay of his execution. (Dkt. 2). The state district court, however, stayed Creech's execution on October 19, pending a commutation hearing before the Idaho Commission of Pardons and Parole, which is presently scheduled for January 19, 2024. (Dkt. 7-1). As a result, Creech has withdrawn his application in this case for a stay of his execution. (Dkt. 10).

corpus relief, including Creech's petition in this case, are subject to the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See United States v. Villa-Gonzalez*, 208 F.3d 1160, 1163-64 (9th Cir. 2000) (holding AEDPA's provisions governing second or successive petition apply to new petition filed after AEDPA's enactment, even if original petition was filed before its enactment).

AEDPA places stringent restrictions on federal habeas corpus relief, including prohibiting an inmate from filing more than one petition, except in limited circumstances. Section 2244(b) of AEDPA establishes the procedural and substantive requirements which govern "second or successive" habeas petitions. *See generally* 28 U.S.C. § 2244(b). Section 2244(b) acts as a "gatekeeper" to prohibit a petitioner from filing a "second or successive" petition in the district court without first obtaining an order from the Ninth Circuit authorizing the district court to consider the petition. *Allen v. Ornoski*, 435 F.3d 946, 955-56 (9th Cir. 2006). Specifically, the statute provides that "before a second or successive application . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). A district court "may not, in the absence of proper authorization from the court of appeals, consider a second or successive habeas application." *Cooper v. Calderon*, 274 F.3d 1270, 1274 (9th Cir. 2001) (per curiam) (internal quotation marks omitted). The Ninth Circuit's authorization is jurisdictional—if a petition is a second or successive petition under § 2244, a district court has no authority to consider the petition's merits absent prior authorization. *Id*.

A petition, however, is not necessarily successive within the meaning of § 2244(b) simply because it is second-in-time. Rather, a "second or successive" petition is a legal term of art. *Allen*, 435 F.3d at 956. Although AEDPA does not define the phrase "second or successive," the Ninth Circuit and other courts have interpreted the concept as a derivative of the abuse-of-the-writ doctrine developed in pre-AEDPA cases. *Id*. "An abuse of the writ occurs when a petitioner raises a habeas claim that could have been raised in an earlier petition were it not for inexcusable neglect." *Id.* (quotations omitted).

The doctrine concentrates on a petitioner's acts to determine whether he has "a legitimate excuse for failing to raise the claim at the appropriate time." *Id.* (quoting *McCleskey v. Zant*, 499 U.S. 467, 490 (1991)). "A petition for review of a new claim that could have been raised earlier may be treated as the functional equivalent of a second or successive petition for a writ of habeas

corpus." *Allen*, 435 F.3d at 957; *see also Cooper*, 274 F.3d at 1273 ("Generally, a new petition is 'second or successive' if it raises claims that were or could have been adjudicated on their merits in an earlier petition."). If the district court determines a petition is "second or successive" within the meaning of § 2244(b), then it lacks jurisdiction to address the petition's merits. *Cooper*, 274 F.3d at 1274.

Creech urges the Court to rule on his motion for a stay of these proceedings under *Rhines* without first considering whether his present petition is successive. (Dkt. 14 at pp. 2-3). In support, he argues that whether his petition is successive is not a factor for consideration under *Rhines*. Whether Creech's petition is "second or successive" under § 2244, however, is determinative of the Court's jurisdiction. If the Court lacks jurisdiction, it cannot address the merits of Creech's *Rhines* motion. Accordingly, the Court considers whether Creech's petition is successive under § 2244(b) to determine whether it has jurisdiction to consider Creech's present petition without Ninth Circuit authorization, and it concludes it does not have jurisdiction.

### B. Creech's Petition is Successive Under § 2244(b)

In response to Creech's *Rhines* motion, the State asserts this Court lacks jurisdiction because Creech's present petition is "second or successive" under § 2244, and he did not obtain the Ninth Circuit's authorization for this Court to consider the petition. In reply, Creech cites to and relies, in part, on his arguments in support of his motion to stay his execution. (*See generally* Dkt. 3 (citing Dkt. 2)). In that motion, Creech acknowledges his "present habeas petition is not his first one" but asserts the "petition should not be regarded as successive." (Dkt. 2 at pp. 3, 5). In support, Creech argues, for example, that "the claim did not exist until the information supporting the theory had come into existence" (*id.* at p. 3); "existing precedent has not given him clear guidance as to when his theory became viable" (*id.*); and the claim is "based on the coming to fruition of a number of trends over the long period of time." (*Id.* at p. 5).[6]

Creech does not directly assert his evolving-standards claim was not ripe for review before he filed his present petition. Indeed, he never uses the terms "ripe," "unripe," or "ripeness" to describe his evolving-standards claim. Nevertheless, the case law on which Creech relies and the nature of his arguments—in both his motion for a stay of his execution and his *Rhines* motion—

---

[6]   Creech makes similar arguments in support of his request to stay this case under *Rhines*. (*See generally* Dkt. 3-1). The Court also considers those arguments in resolving the jurisdictional question of whether Creech's petition is "second or successive" under 28 U.S.C. § 2244(b).

essentially assert his evolving-standards claim was not ripe before he filed his third petition. If a claim was previously not ripe, that fact can be a plausible basis on which to conclude a petition is not successive under § 2244(b). *See Brown v. Atchley*, 76 F.4th 862, 864 (9th Cir. 2023) (noting petition asserting claim not ripe for adjudication when prior habeas petition filed should not be dismissed as successive under § 2244(b)); *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) (same).

Creech only directly addresses the State's argument that his petition is successive under § 2244(b) briefly in his reply brief in support of his *Rhines* motion. (*See* Dkt. 14 at pp. 3-4 ("The State's successiveness argument is misplaced.")). In that reply, he asserts that "a habeas petition is not successive when changed circumstances render a sentence newly unconstitutional" and that "the key question is whether the circumstances in [Creech's] case have in fact changed in the way demanded by successiveness law."[7] (*Id.*). Creech, however, provides no specific factual analysis or citation to authority in support of these broad assertions in reply to the State's successiveness argument. Regardless, the Court considers Creech's arguments and citation to authorities in both his submissions in support of his motion to stay his execution and his *Rhines* motion, as they bear on his implicit assertion he could not have asserted his evolving-standards claim previously because it was not ripe. In these submissions, Creech offers three explanations why his evolving-standards claim was not ripe before he filed his present petition.

1. **Creech's Reliance on *Enmund* is misplaced**

First, Creech relies on *Enmund v. Florida*, 458 U.S. 782 (1982), and attempts to compare the data he alleges in support of his evolving-standards claim in this case to that which the Supreme Court analyzed in *Enmund* to affirm such a claim. (Dkt. 2 at pp. 3-5; Dkt. 3-1 at pp. 3-4). In

---

[7] Creech also argues the State "does not explain *when*—if not now—the evolving-standards claim ought to have been pursued." (Dkt. 14 at p. 4). The burden of establishing ripeness, however, "rests on the party asserting the claim." *Colwell v. HHS*, 558 F.3d 1112, 1121 (9th Cir. 2009). Creech further argues that he has not previously alleged an evolving-standards claim challenging his sentence and that the State does not assert otherwise. (Dkt. 14 at p. 3). That Creech has not previously alleged such a claim, however, only saves the claim from dismissal under § 2244(b)(1), which provides that "a claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application *shall* be dismissed." 28 U.S.C. § 2244(b)(1) (emphasis added). Creech's argument that he has not previously alleged an evolving-standards claim does not answer whether he could and should have alleged it in a prior petition. *See* 28 U.S.C. § 2244(b)(2) (addressing limited circumstances in which new claim may be raised in successive petition).

*Enmund*, the Court addressed "whether death is a valid penalty under the Eighth and Fourteenth Amendments for one who neither took life, attempted to take life, nor intended to take life." *Enmund*, 458 U.S. at 787. In other words, it considered whether the Eighth Amendment permits a defendant's execution for felony murder. *Id.* at 785-86 (discussing felony-murder rule).

In addressing this issue, the Supreme Court noted the Eighth Amendment "is directed, in part, against all punishments which by their excessive length or severity are greatly disproportioned to the offenses charged." *Id.* at 788 (quotation omitted). It then considered a survey of state statutes, juries' sentencing decisions, and the national death-row population in the context of death sentences for felony-murder convictions. *Id.* at 789-95. Based on this information, the Court concluded that "we are not aware of a single person convicted of felony murder over the past quarter century who did not intend the death of the victim, who has been executed" and that "only three persons in that category are presently sentenced to death." *Id.* at 796. Relying in part on this data, the Court held the Eighth Amendment prohibits the imposition of the death penalty for felony murder. *Id.* at 797 ("Although the judgments of legislatures, juries and prosecutors weigh heavily in the balance, it is for us ultimately to judge whether the Eighth Amendment permits the imposition of the death penalty.").

In his pending motions, Creech attempts to apply the analysis in *Enmund* (or one similar to it) to his evolving-standards claim. Relying in *Enmund*, he argues:

> If one goes back twenty-eight years from today's date, as in *Enmund*, there have been 1,261 executions nationwide. Of those, forty-two took place in Arizona, Idaho, Montana, or Nebraska and appear to have involved judge-sentenced inmates. That would constitute 3.3% of the overall executions. However, if Arizona is removed from the list, there would then be seven judge-sentenced executions in the last twenty-eight years, or .6%. In other words, if *Enmund*'s calculation is the north star, then the question of whether Mr. Creech's claim is meritorious now might depend on whether Arizona is or is not counted. Precedent does not unequivocally provide an answer to that question.

(Dkt. 2 at pp. 4-5 (footnote omitted); Dkt. 3-1 at p. 4 (footnote omitted)).

Creech premises this argument on the fact that Arizona imposed a moratorium on executions in January 2023. The gist of Creech's argument appears to be that excluding Arizona's judge-imposed death sentences (based on its moratorium) from a mathematical calculation results in his evolving-standards claim becoming ripe for review in November 2023. (Dkt. 3-1 at p. 3) (discussing Arizona moratorium and arguing "[g]iven the moratorium in Arizona, [Creech] has a

ORDER DISMISSING PETITION FOR LACK OF JURISDICTION - 8

colorable argument that the state counts in his favor in the evolving-standards calculus"). According to Creech, because of the Arizona moratorium in January 2023, "November 2023 [was] the first time [he could] rightly say that it had been a full year without a judge-sentenced execution." (*Id.* at p. 5). Additionally, Creech also alleges other data supports his claim including "[e]xecution data," "death-row populations," "legislative decisions," and "sentencing decisions." (Dkt. 3-1 pp. 5, 7-8).

The Court is not persuaded either *Enmund* or any other authorities addressing evolving-standards claims precluded Creech from previously seeking relief from his death sentence under an evolving standards of decency theory or otherwise counseled that he should delay pursuing such a claim until a death warrant issued for his execution. Contrary to Creech's assertion that "existing precedent has not given him clear guidance as to when his theory became viable" (Dkt. 2 at p. 3), the Supreme Court acknowledged, as early as 1958, that the Eighth Amendment's meaning evolves with the "progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). By 1976, the Court had established an analysis to evaluate the Eighth Amendment under evolving standards of decency by considering "contemporary values concerning the infliction of a challenged sanction" based on "objective indicia [reflecting] the public attitude toward [that] sanction." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Then in 1982, the Court in *Enmund* applied this analysis considering state statutes, jury sentencings, and death-row statistics. 458 U.S. at 789-95.

Thereafter, the Supreme Court has repeatedly held that the evolving standards under the Eighth Amendment prohibit a particular sanction including: (1) imposing a mandatory fixed-life sentence for juveniles who commit homicide, *Miller v. Alabama*, 567 U.S. 460, 479 (2012); (2) imposing a fixed-life sentence for juveniles who commit non-homicide crimes, *Graham v. Florida*, 560 U.S. 48, 75 (2010), *as modified* (July 6, 2010); (3) executing an individual for a non-homicide crime, *Kennedy v. Louisiana*, 554 U.S. 407, 413, *as modified* (Oct. 1, 2008), *opinion modified on denial of reh'g*, 554 U.S. 945 (2008); (4) executing an individual under the age of eighteen at the time of the offense, *Roper v. Simmons*, 543 U.S. 551, 575 (2005); (5) executing an individual with an intellectual disability, *Atkins v. Virginia*, 536 U.S. 304, 321 (2002); and (6) executing an individual under the age of sixteen at the time of the offense. *Thompson v. Oklahoma*, 487 U.S. 815 (1988).

Based on these authorities, Creech should have been aware of the availability of an Eighth Amendment evolving-standards claim when he filed his second petition for habeas corpus relief

in January 2000—or at least at some point during the pendency of that second petition.[8] Although Creech asserts that a conclusion that his present petition is successive "would imply [his evolving-standards claim] must have been brought at the random moment in time when he happened to litigate his initial habeas proceedings," (Dkt. 2 at p. 5), this assertion is not accurate. Creech's second petition was pending before the district court for numerous years including from January 2000 through March 2010 and, again, on remand from June 2012 through March 2017. Creech could have moved to amend his second petition to allege an evolving-standards claim at any time during these timeframes once he had a reasonable quantity of data on which to premise it. *See Allen*, 435 F.3d at 958 (noting petitioner could have sought amendment of his petition "at any time during" the pendency of his habeas petition).

Although Creech's evolving-standards claim may have "evolved" more since March 2017 when the district court finally entered judgment on Creech's second petition, that fact does not establish Creech's claim was not ripe during the pendency of his second petition. *Cf. id.* (noting although "the passage of time makes [a] *Lackey* claim stronger," it is "irrelevant to ripeness").[9] Notably, neither *Enmund* nor any other authority of which the Court is aware required Creech to be able to allege a particular percentage of judge-sentenced executions in the last twenty-eight years (or some other specific timeframe) or that a "full year" had passed "without a judge-sentenced execution" to establish his evolving-standard claim was ripe for review. (*See* Dkt. 3-1

---

[8] Analysis of whether Creech's present petition for habeas corpus relief is "second or successive" is based on his second petition filed in January 2000. Creech's first petition filed in 1986 is not relevant because the state court judge resentenced Creech and entered a new judgment, on remand after Creech was granted relief under the first petition. A new state court judgment on resentencing may constitute a new judgment and a habeas petition challenging that new judgment is not second or successive under § 2244. *See Turner v. Baker*, 912 F.3d 1236, 1237 (9th Cir. 2019) (ruling amended judgment awarding credit for time served constitutes new judgment for purposes of habeas relief); *see also Magwood v. Patterson*, 561 U.S. 320, 331 (2010) (a new judgment entered after resentencing constituted new judgment to which second-or-successive bar did not apply). To the extent Creech relies on *Turner* to argue his present petition is "the same as an initial one," (*see, e.g.*, Dkt. 2 at p. 3), he is incorrect. *Turner* only applies in cases where a new judgment is entered following a grant of habeas relief, which did not occur after Creech's second January 2000 petition. Rather, the district court denied that petition and that denial has been affirmed. *Creech v. Richardson*, 59 F.4th 372 (2023) *cert. denied*, 144 S. Ct. 291 (Oct. 10, 2023).

[9] A "*Lackey* claim" is one which asserts a violation of the Eighth Amendment based on a long tenure on death row. *Allen v. Ornoski*, 435 F.3d 946, 948 (9th Cir. 2006) (citing *Lackey v. Texas*, 514 U.S. 1045 (1995) (Stevens, J., respecting denial of certiorari)).

at pp. 4-5 (asserting these facts)). While perhaps insightful, these allegations are not essential to Creech alleging a ripe evolving-standards claim, and Creech should have been aware of his evolving-standards claim before his second petition was resolved if not sooner.

### 2. Creech's Reliance on *Panetti* and *Martinez-Villareal* is also misplaced

In addition to suggesting his evolving-standards claim was not previously ripe under *Enmund* and related cases, Creech relies on *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998), both of which conclude a subsequent habeas petition raising a *Ford* claim[10] is not "second or successive" under § 2244. In *Martinez-Villareal*, the petitioner had raised a *Ford* claim in a previous habeas petition. Because an execution date had not yet been set, the district court dismissed the claim as unripe. *Martinez-Villareal*, 523 U.S. at 640. Later, when an execution date was set—and his *Ford* claim was "unquestionably ripe"—the petitioner filed a new petition reasserting his *Ford* claim. *Martinez-Villareal*, 523 U.S. at 643.

Rejecting the state's argument that the new petition was successive, the Supreme Court in *Martinez-Villareal* explained the petitioner had a right "to an adjudication of all of the claims presented in his earlier, undoubtedly reviewable, application for federal habeas relief," even though at the time of the filing of the first petition, the *Ford* claim was not ripe. *Id*. The Court construed the two petitions as a single application for habeas relief, thus rendering § 2244(b)(2) inapplicable, stating "[t]here was only one application for habeas relief, and the District Court ruled (or should have ruled) on each claim at the time it became ripe. *Martinez-Villareal*, 523 U.S. at 643. Because the petitioner's *Ford* claim was not ripe when he first raised it, the claim was not successive within the meaning of AEDPA.

The Supreme Court addressed a different but related question in *Panetti*. In that case, the petitioner had previously filed a federal habeas petition but had not alleged a *Ford* claim. *Panetti*, 551 U.S. at 937. When the petitioner later faced execution, he filed a new petition asserting a *Ford* claim for the first time. *Id.* at 938. The Court addressed the timing issue left open in *Martinez-Villareal*—i.e., "where a prisoner raises a *Ford* claim for the first time in a petition filed after the

---

[10] In *Ford v. Wainwright*, 477 U.S. 399 (1986), the Supreme Court ruled that "the Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane," *id.* at 410, and held that a petitioner is entitled under 28 U.S.C. § 2254(d)(2) to an evidentiary hearing on the question of his competence to be executed. *Id.* at 418. Thus, a "*Ford* claim" is shorthand for a petitioner's claim that the Eighth Amendment prohibits his execution because he is mentally incompetent.

federal courts have already rejected the prisoner's initial habeas application." *Panetti*, 551 U.S. at 945 (internal quotation marks omitted).

The Supreme Court recognized that *Ford* claims, "as a general matter, are not ripe until after the time has run to file a first federal habeas petition." *Id.* at 943. As a result, the Court noted that "a prisoner would be faced with two options"—either to forgo raising a *Ford* claim in his first petition or to raise it prematurely in that petition—and that "conscientious defense attorneys would be obliged to file unripe (and, in many cases, meritless) *Ford* claims." *Id.* To avoid this result, the Court concluded that "Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture [where] a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe" and that *"*the statutory bar on 'second or successive' applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe." *Id*. at 947.

The Court is not persuaded Creech's Eighth Amendment evolving-standards claim is analogous to a *Ford* claim for purposes of evaluating successiveness under § 2244(b). A *Ford* claim challenging a petitioner's competency to be executed requires, by its very nature, the determination of his competency at the time of (or near) the execution date. *Martinez-Villareal*, 523 U.S. at 644-45 (noting petitioner's competency prior to that time). By contrast, an Eighth Amendment evolving-standards claim turns on data showing the "contemporary values concerning the infliction of a challenged sanction" based on "objective indicia [reflecting] the public attitude toward [that] sanction." *Gregg*, 428 U.S. at 173. Unlike determining a petitioner's mental condition at the time of his execution, nothing precludes the Court's consideration—prior to the State's scheduling of Creech's execution—of the objective evidence which has developed over time of the nation's values regarding judge-imposed death sentences. Although Creech's evolving-standards claim may have improved over time, that fact alone does not make the claim unripe before the State scheduled his execution on October 12, 2023. *See Allen*, 435 F.3d at 958 (noting that claim is not unripe because it may improve with passage of time).

### 3. Creech's Reliance on the Eighth Amendment's Plain Language is Misplaced.

Finally, Creech makes the argument that his Eighth Amendment evolving-standards claim was not ripe until the state court issued the death warrant based on the Eighth Amendment's use of the term "inflicted." Specifically, Creech asserts that "the Eighth Amendment prohibits the 'infliction' of cruel and unusual punishments"; "[t]he infliction of punishment is distinct from its

imposition"; and a death sentence is not inflicted until the death warrant issues. (Dkt. 3-1 at p. 6). Based on this reasoning, Creech argues it was "appropriate" for him to raise the evolving-standards claim only after the State scheduled his execution. (*Id.*). But a rule based on the Eighth Amendment's plain language that a death penalty challenge is only ripe after the execution is scheduled would be contrary to a significant number of authorities addressing challenges to death sentences long before the scheduling of an execution.

Based on the foregoing, the Court rejects Creech's assertion that his evolving-standards claim was not ripe until the state court issued the death warrant for his execution. Rather, Creech's present petition raising an Eighth Amendment evolving-standards claim is "second or successive" within the meaning of § 2244(b). Creech did not obtain the Ninth Circuit's authorization for this Court to consider the petition. Accordingly, the Court must dismiss this case for lack of jurisdiction.

## ORDER

IT IS ORDERED:

1. Creech's Petition for Writ of Habeas Corpus (Dkt. 1) is DISMISSED for lack of jurisdiction as an unauthorized second or successive petition under 28 U.S.C. § 2244(b).

2. Creech's Motion to Stay and Abey under *Rhines v. Weber* (Dkt. 3) is DENIED as moot.

3. Under District of Idaho Local Civil Rule 9.2(f), the Clerk of Court will immediately provide notice of this decision to counsel for Creech, the Idaho Attorney General, the warden of the Idaho Maximum Security Institution, and the Clerk of the Idaho Supreme Court.

4. The Court GRANTS a certificate of appealability on the question whether Creech's instant petition is second or successive for purposes of 28 U.S.C. § 2244(b). *See* Rule 11 of the Rules Governing Section 2254 Cases.

DATED: January 12, 2024

Amanda K. Brailsford
U.S. District Court Judge