**No. 24-275**

## In the United States Court of Appeals
## for the Ninth Circuit

THOMAS EUGENE CREECH,

Petitioner - Appellant,

v.

TIM RICHARDSON

Respondent-Appellee.

On Appeal from the United States District Court for the District of Idaho in Case No. 1:23-cv-00463-AKB, The Honorable Amanda K. Brailsford

**APPELLANT'S MOTION FOR STAY OF EXECUTION**

**CAPITAL CASE**

**EXECUTION SCHEDULED FOR FEBRUARY 28, 2024**

**RELIEF REQUESTED BY FEBRUARY 28, 2024 TO AVOID IRREPARABLE HARM**

Jonah J. Horwitz, ID Bar No. 10494
Assistant Federal Defender
Federal Defender Services of Idaho
702 W. Idaho St., Ste. 900, Boise, ID 83702
Tel: (208) 331-5530; Fax: (208) 331-5559
ECF: Jonah_Horwitz@fd.org

Attorney for Petitioner-Appellant

To allow Petitioner Thomas Creech's serious constitutional claim to receive the searching scrutiny it deserves before he is improvidently put to death, he respectfully asks the Court to stay his execution until his habeas proceedings are fully resolved or at least until the pending appeal is disposed of.   Federal courts are authorized by 28 U.S.C. § 2251(a)(1) to stay a habeas petitioner's execution while his claim is pending.   *See Zagorski v. Mays*, 906 F.3d 414, 415 (6th Cir. 2018).   Mr. Creech will first demonstrate why he is entitled to a stay as a matter of course.   Then, he will argue in the alternative why a stay is appropriate even if it is discretionary.[1]

## I.   **Mr. Creech is entitled to a stay as a matter of course.**

Mr. Creech has a constitutional and statutory right to federal habeas review of his death sentence.   *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (noting that the Suspension Clause protects a prisoner's right to seek the writ of habeas corpus); *see also* 28 U.S.C. § 2254 (codifying that right).   In light of that right, it is plainly unlawful for an inmate to be executed while his *initial* federal habeas proceedings are ongoing.   *See McFarland v. Scott*, 512 U.S. 849, 858

---

[1] The State has advised Mr. Creech that it opposes this stay request.

(1994) ("[A]pproving the execution of a defendant before his [federal

habeas petition] is decided on the merits would clearly be improper.").[2]

Although Mr. Creech's present habeas petition is not his first one,

he respectfully submits that it ought to be treated as one for stay

purposes.   It is appropriate under longstanding law for inmates to

bring new habeas petitions when changed circumstances render their

convictions or sentences unconstitutional.   Such petitions are not

"successive" within the meaning of habeas law.   *See Panetti v.

Quarterman*, 551 U.S. 930, 942–47 (2007) (concluding that a second

habeas petition raising a newly ripened claim was not successive);

*Stewart v. Martinez-Villareal*, 523 U.S. 637, 641–45 (1998) (same).

When a habeas petition is not successive, it escapes the strict

requirements of 28 U.S.C. § 2244(b), including authorization from the

circuit court.   *See Turner v. Baker*, 912 F.3d 1236, 1237 (9th Cir. 2019).

The petition under review fits comfortably within the same

framework.   Mr. Creech's pending claim is based on the Eighth

Amendment violation that arose when it became clear under the

---

[2] In this filing, unless otherwise noted, all internal quotation marks
and citations are omitted, and all emphasis is added.

evolving standards of decency that there is now a consensus against the

execution of prisoners who were sentenced to death by judges alone,

without the assistance of juries. *See* Dist. Ct. Dkt. 1. By definition,

that claim did not exist until the information supporting the theory had

come into existence.

It would be especially inappropriate to find Mr. Creech's claim

successive because existing precedent has not given him clear guidance

as to when his theory became viable. For example, the Supreme Court

in *Enmund v. Florida*, 458 U.S. 782, 794 (1982) found that it violated

the evolving standards of decency to sentence to death a defendant who

was responsible for the victim's death only in the sense of having

accomplice liability for a felony murder. In *Enmund*, the Court noted

that in the previous twenty-eight years only six of the country's 362

executions (1.7%) involved "a nontriggerman felony murderer." *Id.*

In *Ring v. Arizona*, 536 U.S. 584, 608 n.6 (2002), the Supreme

Court identified five states as permitting capital sentencings to be

performed exclusively by judges: Arizona, Colorado, Idaho, Montana,

and Nebraska. However, in Arizona, Governor Katie Hobbs imposed a

moratorium on all executions in January 2023, which is still in effect.

*See Botched Executions Prompt New Arizona Governor and Attorney General to Halt Executions Pending Independent Review of State's Execution Process*, Death Penalty Information Center, Jan. 23, 2023, available at https://deathpenaltyinfo.org/news/botched-executions-prompt-new-arizona-governor-and-attorney-general-to-halt-executions-pending-independent-review-of-states-execution-process.

Given the moratorium in Arizona, the state counts in Mr. Creech's favor in the evolving-standards calculus.    *See Hall v. Florida*, 572 U.S. 701, 716 (2014) (including jurisdictions that have moratoria on the anti-death "side of the ledger" while determining whether capital punishment is permitted for a particular class of inmates).

If one goes back twenty-eight years from the date of the filing of the habeas petition below, as in *Enmund*, there had been 1,261 executions nationwide.    *See* Dist. Ct. Dkt. 1 at 9–10.    Of those, forty-two took place in Arizona, Idaho, Montana, or Nebraska and appear to have involved judge-sentenced inmates.    *See id*.    That would constitute 3.3% of the overall executions.    However, if Arizona is removed from the list, there would then be seven judge-sentenced executions in the last twenty-eight years, or .6%.    *See id*. at 10.    In

other words, if *Enmund*'s calculation is the north star, then the
question of whether Mr. Creech's claim is meritorious now might
depend on whether Arizona is or is not counted.   Precedent does not
unequivocally provide an answer to that question.

The above just goes to show that Mr. Creech's petition should not
be regarded as successive.   It is based on the coming to fruition of a
number of trends over a long period of time, and he has a plausible
basis for raising it currently, which is why it should be treated as a first
petition.   *See Atkins v. Virginia*, 536 U.S. 304, 311 (2002) (reminding
that under the evolving-standards test a "claim that punishment is
excessive is judged not by the standards that prevailed . . . when the
Bill of Rights was adopted, but rather by those that *currently prevail*").

Execution data reinforces the same proposition.   On June 8, 2022,
Arizona executed Frank Atwood.   *See* Dist. Ct. Dkt. 2-1 at 33.   And on
November 16, 2022, Arizona executed Murray Hooper.   *See id.* at 34.
Messrs. Atwood and Hooper were both sentenced to death by judges.
*See Hooper v. Shinn*, 985 F.3d 594, 609–10 (9th Cir. 2021); *Atwood v.
Ryan*, 870 F.3d 1033, 1061–62 (9th Cir. 2017).   However, as noted
above, Arizona's governor imposed a moratorium on executions in

5

January 2023.   And November 2023 was the first time that Mr. Creech

could rightly say that it had been a full year without a judge-sentenced

execution.   All of that again goes to show why it would be illogical to

maintain that the claim ought to have been raised earlier, and thus why

it is not properly regarded as successive now.

Another reason why Mr. Creech's petition is not successive is that

the Eighth Amendment prohibits the "infliction" of cruel and unusual

punishments.   The infliction of a punishment is distinct from its

imposition.   A capital punishment is "inflicted" when the State seeks to

carry out an execution.   That occurs with the issuance of a death

warrant.   It is consequently appropriate for Mr. Creech to raise the

claim after a date has been scheduled for his execution.   *Cf. Martinez-*

*Villareal v. Stewart*, 118 F.3d 628, 633 (9th Cir. 1997) (explaining why a

competency-to-be-executed claim only ripens with the issuance of a

death warrant).[3]

---

[3] Notably, the judge who sentenced Mr. Creech to death came out in
support of clemency after recognizing that "an execution now would just
be an act of vengeance."   Ruth Brown, *Emotional commutation hearing
held for Idaho's longest-serving man on death row*, Idaho Capital Sun,
Jan. 21, 2024, available at
https://idahocapitalsun.com/2024/01/21/emotional-commutation-
hearing-held-for-idahos-longest-serving-man-on-death-row/.   The

Because Mr. Creech's claim only recently became cognizable, his is essentially a first petition. *See Turner*, 912 F.3d at 1241. It follows that Mr. Creech should be given federal habeas review just as thorough as that afforded to the more conventional first petition. Such review includes, as a matter of course, a stay of execution until the petition is resolved. *See McFarland*, 512 U.S. at 858.

Although the district court regarded Mr. Creech's petition as successive, *see* Ex. 1 at 1, its reasoning was unpersuasive. The district court thought Mr. Creech "should have been aware of the availability of an Eighth Amendment evolving-standards claim when he filed his second petition for habeas corpus relief in January 2000—or at least at some point during the pendency of that second petition." *Id.* at 9–10. But the question is not when Mr. Creech was aware of a *potential* claim. The question is when the claim "became ripe." *Martinez-Villareal*, 523 U.S. at 643. A claim is not successive when it is "based on events that do not occur until a first petition is concluded." *United States v.*

---

judge's comments were one of several factors cited by the three Parole Commissioners who voted for clemency in the tie vote that led to a denial of commutation after the seventh member recused himself for unexplained reasons. *See* https://parole.idaho.gov/wp-content/uploads/2024/01/Creech-Decision-with-signatures_Redacted.pdf.

*Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) (per curiam).[4]  In such

circumstances, a court could always maintain—as the district judge

below essentially did—that the inmate ought to have predicted that

such events would take place.   Nevertheless, the only thing that

matters for successiveness purposes is when the events actually

transpired, since a petitioner cannot actually support the claim until

they do.

The district court's error is illustrated by the dates it proposed for

when Mr. Creech was supposedly obligated to pursue his claim.

According to the district court, Mr. Creech could have amended in his

claim "at any time" between January 2000 and March 2017, since his

previous petition was pending throughout that period.   Ex. 1 at 10.

What the district court never engaged with is the critical question of

whether Mr. Creech could plausibly have defended the claim at any of

those historical moments.   In January 2000, Mr. Creech would have

been contending with the fact that *seven* judge-sentenced executions

---

[4] Federal prisoners moving to set aside their sentences under 28 U.S.C.
§ 2255 face the same successiveness rule that governs state inmates
who are—like Mr. Creech—challenging their sentences under 28 U.S.C.
§ 2254. *See* § 2255(h).   Accordingly, the caselaw from the § 2255
context is relevant here. *See Buenrostro*, 638 F.3d at 723–26.

took place within the previous year alone—not to mention that judges themselves were still imposing such sentences, as it was before *Ring*. *See* Death Penalty Information Center, Execution Database, available at https://deathpenaltyinfo.org/database/executions (hereinafter "DPIC Database").   Had Mr. Creech raised the claim in March 2017, the State would certainly have responded—with justification—that seventeen judge-sentenced executions were carried out in the previous ten years, and nine had happened in only the last five years.   *See id.*   By comparison, it can now be said (again, excluding Arizona) that in the last five years there have been no judge-sentenced executions and in the last ten years there has been only one.[5]

The district court saw it as problematic for Mr. Creech that no binding precedent demanded "a particular percentage of judge-sentenced executions" within a certain period of time.   Ex. 1 at 10. Yet that undeniable fact is precisely why Mr. Creech's petition should *not* be considered successive.   If Mr. Creech had no precise guidance on

---

[5]  Even if Arizona is counted, the statistics are still much more favorable now than they were in 2017: no judge-sentenced executions in the last year, two in the last five years, and four in the last ten years.   *See* DPIC Database.

when his claim ripened, how can he be faulted for choosing the plausible moment that he did?   In fact, the district court itself did not purport to identify an earlier date with even remote specificity. Instead, the district court suggested vaguely that Mr. Creech could have advanced the claim at any point during a seventeen-year period, *see id.*, without attempting to show that his constitutional theory would have been defensible during a single one of those earlier years.   That is equivalent to a rule that a habeas petitioner must bring an evolving-standards claim whenever it can be imagined, at which time it will by definition not be supported by the evidence.   These are legitimate constitutional claims recognized by the Supreme Court and it cannot be the case that they are categorically foreclosed by such a Catch 22.

An identical flaw is apparent in the district court's observation that no caselaw compelled Mr. Creech to wait for "a full year" to pass without any judge-sentenced executions for his claim to ripen.   Ex. 1 at 10.   How long is long enough then?   Six months?   Three?   The district court did not tell us.   Nor has the Supreme Court.   There are seven favorable evolving-standards cases from the Supreme Court cited in this motion: *Enmund*, *Hall*, *Atkins*, *Roper*, *Kennedy*, *Graham*, and

*Coker*.   Each of them deals with different data sets compiled over different periods of time.   It is difficult to understand why one year is the wrong amount of time to wait when no court has ever clarified what the right amount of time is.

The same result is called for by the status of Mr. Creech's pending state post-conviction litigation.   Mr. Creech has presented his evolving-standards claim to the Idaho state courts.   *See* Dist. Ct. Dkt. 2-1.   That case is fully briefed on appeal and will be argued to the Idaho Supreme Court on February 5, 2024.   The structure of modern-day habeas review is founded on the core principle that the state judiciaries pass on alleged constitutional violations in their own criminal-justice systems before any federal intervention occurs.   *See, e.g.*, *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (emphasizing how "exhaustion and procedural default promote federal-state comity" because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without [giving] an opportunity to the state courts to correct a constitutional violation").

There is no reason to disrupt the ordinary course of collateral litigation here.   If this Court grants a stay of execution, it will allow

the state judiciary to give Mr. Creech's substantial new constitutional claim the first level of review while simultaneously preserving the ability of the federal judiciary to conduct its own habeas assessment shortly thereafter.   *See Simmons v. Lockhart*, 915 F.2d 372, 377 (8th Cir. 1990) (clarifying that federal district courts have the authority to hold a second-in-time petition in abeyance pending state post-conviction litigation while simultaneously entering stays of execution); *Collins v. Lockhart*, 707 F.2d 341, 343–44 (8th Cir. 1983) (sending the case back "to the district court with instructions to retain jurisdiction and hold the case in abeyance under the existing stay of execution pending Collins' prompt presentation to the Arkansas Supreme Court of all his federal constitutional claims").   That prudent course of action would balance the need to protect Mr. Creech's constitutional rights with the important comity concerns that are also implicated here.   *See Zant v. Stephens*, 462 U.S. 862, 885 (1983) ("[T]he severity of the [capital] sentence mandates careful scrutiny in the review of any colorable claim of error.").

## II. There is a substantial claim for relief.

Alternatively, if the Court disagrees with Mr. Creech's arguments above and does consider the test that governs stays for successive petitions, it has been met. The Supreme Court has indicated that stays for successive petitions are proper when there are "substantial grounds upon which relief might be granted." *Delo v. Stokes*, 495 U.S. 320, 321 (1990) (per curiam). There are certainly such grounds in the case at bar.

As it happens, that test has already been implicitly deemed satisfied by the district court's decision to grant a certificate of appealability ("COA") on the question of whether Mr. Creech's petition is second or successive. *See* Ex. 1 at 13. COAs are only given when the habeas petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is true even for COAs related to procedural issues. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that for claims dismissed on procedural grounds "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of

reason would find it debatable whether the district court was correct in its procedural ruling"). Thus, by awarding a COA, the district court signaled that Mr. Creech's claim was substantial, which is the controlling standard.

If the Court's inquiry proceeds further, the same outcome obtains. The evolving-standards test considers decisions by legislatures, juries, appellate courts, and governors. *See Roper v. Simmons*, 543 U.S. 551, 563–65 (2005); *Atkins*, 536 U.S. at 313–17. "Statistics about the number of executions" are also relevant. *Kennedy v. Louisiana*, 554 U.S. 407, 433 (2008). As demonstrated more fully by a review of Mr. Creech's state post-conviction petition, he has assembled a copious amount of evidence along each of those metrics to establish that the evolving standards of decency condemn the execution of a judge-sentenced inmate. *See* Dist. Ct. Dkt. 2-1 at 7–31.

In terms of death-row populations, Mr. Creech shows in his post-conviction petition that there are roughly forty-nine judge-sentenced inmates on death rows around the country. *See* Dist. Ct. Dkt. 2-1 at Part II.A.1.a.[6] That is well below the number of juvenile non-homicide

---

[6] Given the exigency occasioned by the death warrant, Mr. Creech

life-sentenced inmates that were tallied up in *Graham v. Florida*, 560

U.S. 48, 64 (2010), where the practice was deemed unconstitutional

under the evolving standards of decency.   And the 2.1% of death-row

prisoners who were put there by judges is substantially lower than the

10% ratio that was seen as evidencing a consensus in *Coker v. Georgia*,

433 U.S. 584, 596–97 (1977) (plurality op.).

As for execution rates, Mr. Creech describes above how the data

militates in favor of his claim.   *See supra* at Part I.

With respect to legislative decisions, Mr. Creech explains in his

post-conviction petition that only five states had decided—at the time

*Ring* was announced—to allow for judge sentencing in capital cases,

even though the Supreme Court had before then approved of the

practice.   *See* Dist. Ct. Dkt. 2-1 at Part II.A.1.a.   There were also three

additional states at that time that involved juries in capital sentencings

but diluted their influence, such as by authorizing death sentences

despite non-unanimous verdicts, allowing judges to overrule verdicts for

life, and so forth.   *See Woodward v. Alabama*, 571 U.S. 1045, 1048

---

relies here on the statistics assembled in state court.   He does not
believe the numbers have changed in any substantial way in the
interim.

15

(2013) (Sotomayor, J., dissenting) (placing in that category Alabama, Delaware, and Florida).    In Delaware, the state supreme court struck down the capital statute in 2016 and the legislature declined to fix the infirmity, leading to what is essentially a legislative abolition of the death penalty there.    *See* Carol S. Steiker & Jordan M. Steiker, *Little Furmans Everywhere: State Court Intervention and the Decline of the American Death Penalty*, 107 Cornell L. Rev. 1621, 1632–38 (2022). The Alabama legislature abolished judicial override in 2017.    *See* Meghann M. Lamb, *Overturning Override: Why Executing a Person Sentenced to Death by Judicial Override Violates the Eighth Amendment*, 95 S. Cal. L. Rev. 663, 666 (2022).    Florida is the only exception in that it does still allow for death sentences to be imposed in the absence of a unanimous jury verdict.    *See* Fla. Stat. Ann. § 921.141(2)(c).    In overview, of the three most relevant states, two have reduced the influence of the judge at capital sentencings, and no other jurisdiction has moved in the opposite direction.    That reflects "the consistency of direction of change" in Mr. Creech's favor.    *Roper*, 543 U.S. at 566.

Turning to sentencing decisions, in the few states that allowed it, judicial override was used 125 times in the 1980s, 74 times in the 1990s, and then only 27 times between 2000 and 2013.   *See Woodward*, 571 U.S. at 1049 (Sotomayor, J., dissenting).   That shows a steady decline in the appetite of state courts to sentence defendants to death without the unanimous approval of juries.   Of the twenty-seven judicial overrides that occurred between 2000 and 2013, twenty-six of them took place in Alabama.   *See id.*   That demonstrates that the practice has become extremely isolated as a geographical matter, which again reflects its unpopularity nationwide.   *See Kennedy*, 554 U.S. at 427, 434 (stressing in its finding of an evolving standard of decency that there was only one state that had imposed the sentence at issue in the previous forty-four years).

Additionally, in his post-conviction petition, Mr. Creech surveys the trends against the death penalty generally, *see* Dist. Ct. Dkt. 2-1 at Part II.A.1.d., which he is entitled to rely on in making out his particular evolving-standards theory, *see Hall*, 572 U.S. at 716 (including states that have abolished and that have moratoria in the evolving-standards count for a specific type of inmate).   As set forth in

the petition, twenty-two states have abolished the death penalty. *See* Dist. Ct. Dkt. 2-1 at Part II.A.1.d. Three additional states have moratoria on executions. *See id.* Eleven other states authorize the death penalty but have not executed anyone in the last ten years. *See id.* Death sentences are dramatically down over the last two decades, declining from 315 in 1996 to just twenty in 2022—with seven straight years with fewer than fifty in each year. *See id.* The number of people on death row around the country has now declined for twenty-one straight years. *See id.* Executions have dropped by 82% since their peak of 98 in 1999, with just eighteen in 2022 and fewer than thirty each year for the last eight. *See id.*

Finally, in his post-conviction petition, Mr. Creech points to the substantive basis for the courts to embrace his evolving-standards theory, since—under the Eighth Amendment—it is "the *jury's* task of expressing the conscience of the community on the ultimate question of life or death." *McCleskey v. Kemp*, 481 U.S. 279, 309 (1987).

In view of the above, Mr. Creech has a substantial claim for relief.

## III.   The traditional stay factors are satisfied.

To the extent the more traditional, non-habeas stay factors are

relevant, they too all militate in Mr. Creech's favor.   Those factors are

the likelihood of success on the merits, the relative harms to the parties,

and the extent to which the inmate engaged in unnecessary delay.   *See*

*Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004).   Mr. Creech has

already demonstrated the likelihood of success on the merits in his

discussion above of the *Delo* test.   *See supra* Part II.

  As for the relative harms to the parties, the balance could not

possibly weigh more strongly in favor of a stay.   Mr. Creech was first

sentenced to death in this case more than forty years ago.   The single

claim in his current habeas petition can be resolved expeditiously

without adding more than what is comparatively a nominal amount of

time.   And such a pause is, in the context of four decades of litigation, a

trivial burden for the State at most.   *See Mikutaitis v. United States*,

478 U.S. 1306, 1309 (1986) (Stevens, J., in chambers) (granting a stay

and emphasizing that the government would not "be significantly

prejudiced by an additional short delay").   By contrast, the harm to Mr.

Creech occasioned by the denial of a stay is the most extreme type

imaginable: his death.   *See Towery v. Brewer*, 672 F.3d 650, 661 (9th

Cir. 2012) (noting that irreparable harm is always present when the

plaintiff is challenging his execution); *accord Battaglia v. Stephens*, 824
F.3d 470, 475 (5th Cir. 2016) (per curiam) ("[I]n a capital case, the
possibility of irreparable injury weighs heavily in the movant's favor.");
*Beaver v. Netherland*, 101 F.3d 977, 979 (4th Cir. 1996) (describing
"irreparable harm" as a "certainty" in capital cases when there is no
stay of execution).

Finally, far from indulging in delay, Mr. Creech has acted
diligently.   As outlined above, the area of law at issue makes two
triggering events most appropriate: 1) the existence of a solid
evidentiary showing regarding the evolving standards of decency; and
2) the issuance of a death warrant.   Mr. Creech promptly filed his post-
conviction petition after both of those events, and he has now moved
with alacrity to pursue the necessary remedies in federal court.

## IV.   Conclusion

To ensure that Mr. Creech's substantial constitutional challenge
to his death sentence is not mooted forever by a hasty execution, he
respectfully requests a stay until the habeas proceedings are fully
resolved, or at least until the instant appeal is disposed of.

DATED this 1st day of February 2024.

*/s/ Jonah J. Horwitz*
Jonah J. Horwitz

Attorney for Petitioner-Appellant


## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of February 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Case Management System ("ACMS").

I certify that all participants in the case are registered ACMS users and that services will be accomplished by ACMS.

*/s/ Jonah J. Horwitz*
Jonah J. Horwitz